UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | : | |
| CHRISTOPHER WOLFE, | : | CIVIL ACTION NO: |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| OVERHEAD DOOR CORPORATION, | : | |
| Defendant | : | NOVEMBER 3, 2021 |
| | : | |

## **PETITION FOR REMOVAL**

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT:

Defendant Overhead Door Corporation respectfully states:

1.      On or about October 4, 2021 an action was commenced against Defendant Overhead Door Corporation in the Superior Court for the Judicial District of New Haven, in the State of Connecticut, captioned <u>Christopher Wolfe v. Overhead Door Corporation</u>, ("State Action"), by service of process on Defendant's agent for service in Connecticut.  Copies of all process, pleadings and orders served upon Defendant in the State Action are annexed hereto as Exhibit A.

2.      This action is removed to this Court on the ground that original jurisdiction exists pursuant to 28 U.S.C. § 1331, federal question jurisdiction.  Plaintiff Christopher Wolfe alleges that Defendant violated his rights under the federal False Claims Act, 31 U.S.C. §3730 (h), 26 U.S.C. §7623 as well as Connecticut General Statutes § 31-51q.

3.      This action is removed to this Court on the ground that original

jurisdiction exists pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

4.     28 U.S.C. § 1441 authorizes the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."

5.     The Complaint alleges that Plaintiff is domiciled in and a resident of Connecticut.

6.     Defendant Overhead Door Corporation is incorporated in Indiana, with its principal place of business in Lewisville, Texas.

7.     There are no other defendants in this case.

8.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     Defendant Overhead Door Corporation first received the complaint upon which this removal is based by service on or about October 4, 2021. Therefore, this Petition for Removal is filed with this Court within thirty (30) days, as calculated under Rule 6 of the Federal Rules of Civil Procedure.

10.    Defendant Overhead Door Corporation submits this Petition for Removal without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief can be granted.

11.    This Petition will be filed promptly with the Superior Court for the Judicial District of New Haven, as required by 28 U.S.C. § 1446(d).

12.    By copy of this document and in accordance with the Certificate of Service, Defendant Overhead Door Corporation is providing notice to all parties in this action advising of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

2

13.     Defendant cannot file this Petition in the Superior Court for the Judicial District of New Haven as required by 28 U.S.C. § 1446(d) yet because Plaintiff has not returned the matter to Court as required pursuant to Connecticut General Statutes §52-46a as of the date of filing of the present Petition.  Therefore, in satisfaction of 28 U.S.C. § 1446(d), this Notice of Removal is being mailed to the Superior Court for the Judicial District of New Haven on the same date as the filing of the instant Petition.

WHEREFORE, Defendant Overhead Door Corporation respectfully requests that the above action, now pending in the Superior Court, State of Connecticut, in the Judicial District of New Haven, be removed to this Court.

DEFENDANT,
OVERHEAD DOOR CORPORATION

By:*/s/ Holly L. Cini*
Holly L. Cini (ct16388)
Holly.Cini@jacksonlewis.com
Justin E. Theriault (ct28568)
Justin.Theriault@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 3, 2021, a copy of foregoing was served by first class

mail, postage prepaid on the following parties and or counsel of record:

> Todd D. Steigman
> Madsen, Prestley & Parenteau, LLC
> 402 Asylum Street
> Hartford, CT 06103
> tsteigman@mppjustice.com

> _/s/ Justin E. Theriault_
> Justin E. Theriault

# EXHIBIT A

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-20
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| | |
|---|---|
| **For information on ADA accommodations, contact a court clerk or go to: _www.jud.ct.gov/ADA_.** | STATE OF CONNECTICUT **SUPERIOR COURT** www.jud.ct.gov  |

Instructions are on page 2.

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk (Number, street, town and zip code) | Telephone number of clerk | Return Date (Must be a Tuesday) |
|---|---|---|
| 235 Church Street, New Haven CT 06510 | ( 203 ) 503 – 6800 | November 16, 2021 |

| ☒ Judicial District   G.A. | At (City/Town) | Case type code (See list on page 2) |
|---|---|---|
| ☐ Housing Session   ☐ Number: | New Haven | Major: **T**   Minor: **90** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (if attorney or law firm) |
|---|---|
| Todd D. Steigman at Madsen, Prestley & Parenteau, LLC, 402 Asylum Street, Hartford CT 06103 | 415600 |

| Telephone number | Signature of plaintiff (if self-represented) |
|---|---|
| ( 860 ) 246 – 2466 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book (if agreed) tsteigman@mppjustice.com |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and address of each party (Number; street; P.O. Box; town; state; zip; country, if not USA) | |
|---|---|---|
| **First plaintiff** | Name: Wolfe, Christopher<br>Address: 243 3rd Avenue, Milford CT 06460 | P-01 |
| **Additional plaintiff** | Name:<br>Address: | P-02 |
| **First defendant** | Name: Overhead Door Corporation2501<br>Address: 2501 S. State Hwy. 121 Bus., Suite 200, Lewisville TX 75067 | D-01 |
| **Additional defendant** | Name:<br>Address: | D-02 |
| **Additional defendant** | Name:<br>Address: | D-03 |
| **Additional defendant** | Name:<br>Address: | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

**Notice to each defendant**

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed (Sign and select proper box) | ☒ Commissioner of Superior Court | Name of person signing |
|---|---|---|---|
| 10/04/2021 | | ☐ Clerk | Todd D. Steigman |

| If this summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. | |
| c. The court staff is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | |

| I certify I have read and understand the above: | Signed (Self-represented plaintiff) | Date | Docket Number |
|---|---|---|---|

Print Form          Page 1 of 2          Reset Form

## STATE OF CONNECTICUT

**RETURN DATE:  NOVEMBER 16, 2021**

| | |
|---|---|
| **CHRISTOPHER WOLFE,**<br>**Plaintiff** | : | **SUPERIOR COURT** |
| | : | |
| | : | **JUDICIAL DISTRICT OF NEW HAVEN** |
| **v.** | : | |
| | : | **AT NEW HAVEN** |
| **OVERHEAD DOOR CORPORATION,** | : | |
| **Defendant** | : | |
| | : | **OCTOBER 4, 2021** |

### COMPLAINT

**I.   Introduction**

    1.  Plaintiff Christopher Wolfe brings this action against his former employer, Defendant Overhead Door Corporation, for retaliation in violation of the federal False Claims Act, 31 U.S.C. § 3730(h), as well as 26 U.S.C. § 7623, and Connecticut General Statutes § 31-51q.

**II.   Parties**

    2.  Plaintiff, Christopher Wolfe, resides in Milford, Connecticut.

    3.  Defendant Overhead Door Corporation is a company which transacts business and employs individuals in the State of Connecticut.

**III.   Background**

    4.  Plaintiff commenced his employment with Defendant on May 28, 2019.

    5.  Plaintiff's position with Defendant was Regional Sales Manager for the Northeast region.

    6.  Defendant's business includes the manufacture, sale, and installation of manual and automatic door systems.

7. Defendant sells and installs these door systems to customers throughout the United States, including private businesses, and local, state, and federal government entities.

8. During Plaintiff's employment with Defendant, Plaintiff became aware of various business practices by Defendant that Plaintiff believed were illegal and unethical.

A. Defendant Submitted False and Fraudulent Charges to Customers for Work That Defendant Never Performed

9. One of the issues that Plaintiff communicated concerns regarding related to Defendant's fraud and theft associated with preventative maintenance contracts.

10. Many of Defendant's contracts included ongoing preventative maintenance on the automatic door systems after the systems were installed.  These contracts required Defendant to conduct site visits and inspections on a monthly, quarterly, or semi-annual basis.  The inspections were to cover various issues, including, but not limited to, ANSI 156.10 compliance.  Preventative maintenance inspections are important to ensure that the automatic door systems operate properly and safely.

11. In many cases, Defendant invoiced and billed customers for the preventative service services as specified in the contract, even if Defendant never performed the preventative maintenance services and inspections.  The customers whom Defendant billed for preventative maintenance services that were not performed include, but are not limited to:

      a. Federal Reserve Bank of Philadelphia

      b. U.S. armed services, Quantico, Virginia

      c. Newark International Airport

2

   d. Port Authority of New Jersey

   e. Children's Hospital of Pennsylvania (CHOP)

   f. University of Virginia Hospital

   g. Johnson & Johnson

   h. GlaxoSmithKline

   i. M&T Bank, Wilmington, Delaware

   j. Geisenger Pharmaceutical

   k. Merck

   l. GEIS Realty Group

   m. Radisson Hotel

   n. Jersey City Housing Authority

   o. CBRE

  B. <u>Plaintiff Opposed False and Fraudulent Charges to Customers For Work That Defendant Never Performed</u>

12. Plaintiff expressed concerns to Defendant's senior management about the fact that Defendant was fraudulently billing customers for work that Defendant never performed, and was essentially stealing from these customers.

13. On October 9, 2019, Plaintiff had opportunities to meet with Defendant's senior officers, including Kirk Brunson, President of Defendant's Horton division, Peter Lawson, Vice President and General Manager of Defendant's Door Services division, and Kelly Terry, Defendant's CEO.

14. Plaintiff stated directly to Peter Lawson, in the presence of both Kirk Brunson and Kelly Terry, that it would be theft if Defendant did not perform this work for which Defendant was billing customers.

15. Mr. Lawson responded by telling Plaintiff that he had too many other problems to address.

16. Mr. Brunson added that the practice had been ongoing since Defendant implemented an Oracle database system.

17. Defendant's CEO, Kelly Terry, told Plaintiff that "we will work on this and get back to you."

18. Plaintiff never received a response from Defendant regarding his concerns.

19. However, five days later, on the following Monday, October 14, 2019, Plaintiff received notice in the mail that Defendant had terminated his employment.

      C.    <u>Plaintiff Expressed Concern to Defendant's Senior Leaders About Defendant's Deficient Performance Which Created Safety Hazard</u>

20. Defendant had entered into a contract with the University of Virginia Hospital to install more than 100 ICU/CCU doors (intensive care unit/critical care unit) in the Hospital.

21. In the contract, Defendant had promised to install doors that were certified as meeting the standards of UL 1784, which related to infection control, and NFPA 101, which related to emergency egress.

22. Defendant bid for the job, and received the contract, but the doors that Defendant installed were never certified as compliant with the UL 1784 and NFPA 101 standards, and they did not satisfy the criteria for those standards.

23. Consequently, the doors that Defendant installed in the Hospital presented potential public health and safety risks because they did not meet the strict standards for infection control that were required, and also did not permit emergency egress as required.

4

24. On or about October 9, 2019, Plaintiff expressed concerns to Kirk Brunson, as
    well as to John Cringole, Senior Director of Product Development, regarding
    Defendant's failure to perform at the Hospital which presented potential safety
    and public health hazards.

25. Plaintiff expressed to Kirk Brunson and John Cringole that Defendant should
    remove the non-compliant doors and install the doors that were properly certified
    and compliant as required by the contract.

26. In response, Plaintiff was advised that if he raised that issue with the General
    Contractor, Plaintiff would never have a job again in the industry.

27. Five days later, on the following Monday, October 14, 2019, Plaintiff received
    notice in the mail that Defendant had terminated his employment.

> D.    Plaintiff Expressed Concern to Defendant Regarding
>       Underpayment of Tax Liabilities

28. Another issue that Plaintiff raised with Defendant in October 2019 related to a
    widespread practice for disposing of, and selling, scrap aluminum, but not
    recording the transactions or paying taxes on the funds received.

29. Plaintiff understood that there was a common practice whereby Defendant's
    employees would collect aluminum when performing installation services at
    customer locations, and while on the clock and while using Defendant's
    equipment and trucks, would bring the aluminum to a scrap yard and sell the
    metal for money.

30. Plaintiff understood that Defendant did not record the monetary transaction for
    accounting or tax purposes, and did not report the money as income to the
    employees who received the funds.  Plaintiff also understood that Defendant's

5

employees kept the money, but almost certainly did not pay taxes on the money received.

31. It is Plaintiff's understanding that this was a common practice for Defendant's employees in Pittsburgh, in New Jersey, in Virginia, in Texas, and likely other locations as well.

32. Plaintiff understood that Defendant had knowledge of this practice, and allowed it to continue.

33. Plaintiff also understood that this practice occurred without the knowledge of Defendant's customers whose aluminum was being exchanged for money by Defendant's employees.

34. On or about October 9, 2019, Plaintiff expressed concerns regarding this practice to Peter Lawson and to Jolyn Pratt, of Human Resources.

35. Five days later, on the following Monday, October 14, 2019, Plaintiff received notice in the mail that Defendant had terminated his employment.

**COUNT ONE:**   **<u>RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT</u>**

36. Based on the foregoing, Defendant retaliated against Plaintiff in violation of the False Claims Act, 31 U.S.C. § 3730(h).

37. Plaintiff engaged in efforts to stop one or more violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*

38. Plaintiff engaged in protected activity under the federal False Claims Act because he opposed Defendant's practice of submitting false and fraudulent claims for payment to the U.S. Government, or on other projects that were being paid for

6

using federal funds, for preventative maintenance services that were never performed, including, but not limited to, with respect to the Federal Reserve Bank and the U.S. armed services.

39. Plaintiff also engaged in protected activity under the federal False Claims Act because he opposed Defendant's actions to falsely certify payroll documents regarding projects that involved federal agencies, or which Plaintiff understood were being subsidized with federal government funds, including the U. S. Department of Defense, the Port Authority of New York, the Port Authority of New Jersey, the Pennsylvania Department of Transportation, and the Delaware Department of Transportation. Defendant made false certifications to the government regarding payroll costs and wages paid with respect to these projects, and Plaintiff opposed those actions by Defendant. In addition to others, Plaintiff raised concerns to Julio Cunha (Director) and Sharon Burch (General Manager) less than sixty (60) days before the termination of his employment.

40. Defendant had knowledge of Plaintiff's protected activity.

41. Defendant subjected Plaintiff to an adverse action, including, but not limited to, termination of Plaintiff's employment.

42. There is a causal connection between Plaintiff's protected activity and the adverse retaliatory action taken by Defendant against Plaintiff.

43. Defendant's violation of Plaintiff's rights has caused Plaintiff to suffer damages, including, but not limited to, lost employment, lost compensation and benefits, compensatory damages, and special damages.

44. Plaintiff has also incurred attorney's fees and costs.

7

COUNT TWO:     **VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 31-51q**

45. Based on the foregoing, Defendant violated Plaintiff's rights under Section 31-51q of the Connecticut General Statutes.

46. Plaintiff spoke as a citizen on matters of public concern and engaged in protected speech under the First Amendment to the U.S. Constitution and Section 3, 4, or 14 of Article First of the Connecticut Constitution.

47. Plaintiff's protected speech also related to serious wrongdoing, official dishonesty, and threats to public health and safety.

48. Defendant had knowledge of Plaintiff's protected speech.

49. Defendant subjected Plaintiff to an adverse action, including, but not limited to, termination of Plaintiff's employment.

50. There is a causal connection between Plaintiff's protected activity and the adverse retaliatory action taken by Defendant against Plaintiff.

51. Defendant's violation of Plaintiff's rights has caused Plaintiff to suffer damages, including, but not limited to, lost employment, lost compensation and benefits, and compensatory damages.

52. Defendant also acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

53. Plaintiff has also incurred attorney's fees and costs.

COUNT THREE:     **RETALIATION IN VIOLATION OF 26 U.S.C. § 7623**

54. Based on the foregoing, Defendant also retaliated against Plaintiff in violation of 26 U.S.C. § 7623(d).

55. Plaintiff engaged in protected activity under 26 U.S.C. § 7623(d) by providing information regarding the underpayment of taxes or conduct which he reasonably believed constituted a violation of the internal revenue laws or any provision of Federal law relating to tax fraud to a person with supervisory authority over Plaintiff, or a person working for Defendant who has the authority to investigate, discover, or terminate misconduct.

56. Defendant had knowledge of Plaintiff's protected activity.

57. Defendant subjected Plaintiff to an adverse action, including, but not limited to, termination of Plaintiff's employment.

58. There is a causal connection between Plaintiff's protected activity and the adverse retaliatory action taken by Defendant against Plaintiff.

59. Plaintiff previously exhausted his administrative remedies before OSHA with respect to this claim.  In March 2020, Plaintiff filed a claim under 26 U.S.C. § 7623 with OSHA.  Plaintiff's complaint has been pending at OSHA for more than 180 days without a final decision.

60. Defendant's violation of Plaintiff's rights has caused Plaintiff to suffer damages, including, but not limited to, lost employment, lost compensation and benefits, special damages, and compensatory damages.

61. Plaintiff has also incurred attorney's fees and costs.

**DEMAND FOR RELIEF**

Plaintiff hereby demands Judgment against Defendant, a Trial by Jury, and other relief, including, but not limited to the following:

1. Compensatory and economic damages, including, but not limited to, lost compensation and benefits, emotional distress, harm to reputation, and loss of enjoyment of life's activities.

2. Past and Future Economic damages.

3. Reinstatement and/or Front Pay.

4. Double damages under 31 U.S.C. § 3730(h) and 26 U.S.C. § 7623(d).

5. Attorney's fees and costs.

6. Statutory and common law punitive damages.

7. Interest.

8. Equitable Relief, and Prospective Injunctive Relief.

9. Other relief that in law or equity may pertain.

Plaintiff,
Christopher Wolfe

By:

Todd Steigman
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
(860) 246-2466 (tel.)
(860) 246-1794 (fax)
tsteigman@mppjustice.com
Juris No. 415600

STATE OF CONNECTICUT

**RETURN DATE:  NOVEMBER 16, 2021**

| | | |
|---|---|---|
| **CHRISTOPHER WOLFE,** | : | **SUPERIOR COURT** |
| **Plaintiff** | : | |
| | : | **JUDICIAL DISTRICT OF NEW HAVEN** |
| **v.** | : | |
| | : | |
| **OVERHEAD DOOR CORPORATION,** | : | |
| **Defendant** | : | |
| | : | **OCTOBER 4, 2021** |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand is greater than $15,000.00, exclusive of interest and costs.


PLAINTIFF,
CHRISTOPHER WOLFE


By:_____
Todd Steigman
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
(860) 246-2466 (tel.)
(860) 246-1794 (fax)
tsteigman@mppjustice.com
Juris No. 415600
His Attorneys

A TRUE COPY
ATTEST:
SCOTT M. KAMMER
CONNECTICUT STATE MARSHAL
HARTFORD COUNTY

12